UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| ALISHA NUTT, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EMPEREON MARKETING, LLC,<br><br>Defendant. | CIVIL CASE NO. 6:20-cv-01029 |

**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff, Alisha Nutt, individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendant, Empereon Marketing, LLC, and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, Alisha Nutt (hereinafter referred to as "Plaintiff"), individually and on behalf of all similarly situated persons employed by Defendant, Empereon Marketing, LLC (hereinafter referred to as "Empereon" or "Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and pursuant to Texas common law.

2. Plaintiff worked as a call center employee at Defendant's Waco, Texas location.

3. Plaintiff and the Putative Class Members are those similarly situated persons who have worked for Empereon in call centers throughout the United States at any time during the

relevant statute of limitations period and have not been paid for all hours worked in violation of state and federal law.

4. Empereon implemented a uniform company-wide policy which required its call center employees to perform work off-the-clock and without pay in violation of state and federal law.

5. Empereon's unlawful company-wide policies have caused call center employees to be denied compensation for hours worked

6. Since Plaintiff and the Putative Class Members routinely worked in excess of forty (40) hours per workweek, due to Empereon's unlawful company-wide policies, Plaintiff and the Putative Class Members were not been paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

7. Plaintiff brings this action on behalf of herself and all other similarly situated call center employees employed by Defendant to obtain declaratory relief and recover unpaid wages and overtime, liquidated damages, penalties, fees and costs, pre- and post-judgment interest, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq*.

9. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

10. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

11. Defendant's annual sales exceed $500,000 and they have more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's call center employees engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

12. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant's contacts in this district would be sufficient to subject it to personal jurisdiction in this district.

**PARTIES**

14. Plaintiff is a resident of Waco, Texas and was employed by Defendant as a call center employee in Defendant's Waco, Texas location from about October 16, 2018 through June 11, 2020. Plaintiff signed a consent form to join this lawsuit, which is attached hereto as Exhibit 1.

15. Empereon Marketing, LLC is a Colorado corporation with its headquarters located at 10400 N. 25th Ave., Ste.100 Phoenix, AZ 85021.[1]

16. Empereon Marketing, LLC's registered agent in the state of Texas is BUSINESS FILINGS INCORPORATED, 701 BRAZOS ST. STE. 720 AUSTIN, TX 78701.

17. Empereon is a "leading business process outsourcing company providing end-to-end customer engagement and customer management solutions through two distinct, but affiliated, privately held entities, Empereon Marketing LLC and Constar Financial Services

---

[1] See Defendant's website: https://www.empereon-constar.com/about/strategic-locations.html (Last Accessed October 5, 2020).

LLC. Empereon Marketing was founded in 1997 followed in 2008 by Constar Financial Services, which was launched as a full-service customer management and accounts receivable company."[2]

## GENERAL ALLEGATIONS

18. Plaintiff's and other similarly situated call center employees' primary job duties include handling incoming calls and providing customer service, among other non-exempt duties.

19. Plaintiffs and similarly situated call center employees hold titles such as "call center representatives" and "call center agents," among others (hereinafter referred to as "call center employees").

20. Throughout Plaintiff's employment with Defendant, Plaintiff and other call center employees regularly worked off-the-clock.

21. In order to perform their jobs, Defendant's call center employees are required to boot up their computers, log into various computer programs, among other tasks, before they can take their handle their first incoming call at the start of their scheduled shifts.

22. In order to perform their jobs, Defendant's call center employees are required to close/shut down all their computer programs and systems after the end of their scheduled shifts.

23. In order to perform their jobs and meet Defendant's deadlines, Defendant's call center employees are required to perform additional work activities, such as handling paperwork and attending meetings, outside of their scheduled shifts.

24. The activities call center employees performed outside of their scheduled shifts benefited Defendant and were essential to their responsibilities as call center employees.

25. Defendant required Plaintiff and other call center employees to perform these activities outside of their scheduled shifts but prohibited call center employees from clocking in

---

[2] See Defendant's website: https://www.empereon-constar.com/about/who-we-are.html (Last Accessed October 5, 2020).

for this time. Defendant's policy compelled them to perform these activities *without* clocking in for it and therefore perform it *off-the-clock*.

26. The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's call center employees, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." Fact Sheet #64 at p. 2. The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id*.

27. As a result of Defendant's company-wide policy and practice of requiring Plaintiff and other call center employees to perform these tasks outside of their scheduled shift hours, Plaintiff and other call center employees have not been compensated for all hours worked.

28. As non-exempt employees, Plaintiff and other call center employees were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

29. Because Plaintiff and other call center employees typically worked at least 40 hours in a workweek, they were not paid for time spent working in excess of 40 hours in a workweek at 1.5 times their regular rate, in violation of the FLSA.

30. For example, in the pay period of March 30, 2020 through April 12, 2020 Plaintiff worked over 40 hours in each workweek, as well as additional hours off-the-clock.

31. Defendant has been aware of its obligation to pay overtime for all hours worked in excess of forty (40) each week to Plaintiff and other call center employees but has failed to do so.

32. Defendant knew or could have easily determined how long it took for its call center employees to complete their start-up, shut down, and additional work tasks outside of their scheduled shift hours and could have properly compensated call center employees for this work they performed, but did not.

33. At all relevant times, Defendant was Plaintiff's "employer" and Defendant directed and directly benefited from the work performed by Plaintiff and other call center employees off-the-clock.

34. At all relevant times, Defendant controlled Plaintiff's and all other call center employees' work schedule, duties, protocols, applications, assignments, and employment conditions.

35. Defendant knew or should have known that the time call center employees spent performing start-up, shut down, and additional work activities outside of their scheduled shifts is compensable under the FLSA.

36. At all relevant times, Defendant was able to track the amount of time that Plaintiff and other call center employees spent in connection with these start-up, shut down, and additional work activities outside of their scheduled shifts; however, Defendant failed to document, track, or pay them for such work.

37. At all relevant times, Defendant's policies and practices deprived Plaintiff and other call center employees of wages owed for the start-up, shut down, and additional work activities

Plaintiff and other call center employees performed outside of their scheduled shifts, in violation of the FLSA and Texas common law.

## COLLECTIVE ACTION ALLEGATIONS

38. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> *All current and former call center employees who worked for Defendant in any of their locations in the United States at any time within the three years preceding the commencement of this action and the date of judgment.*

(hereinafter referred to as the "Collective"). Plaintiff reserves the right to amend this definition as necessary.

39. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The Collective of employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practice, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

40. The employment relationships between Defendant and every Collective member are the same and differ only in name, location, and rate of pay. The key issues – the amount of uncompensated work time owed to each employee – do not vary substantially from Collective member to Collective member.

41. The key legal issues are also the same for every Collective member: time spent booting up and shutting down their computer, logging in and out of computer programs, and performing other work tasks essential to their responsibilities as call center employees off-the-clock is compensable under the FLSA.

42. Plaintiff estimates that the Collective, including both current and former employees over the relevant period, will include at least hundreds of members. The precise number of Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> *All current and former call center employees who worked for Defendant in the state of Texas at any time within the four years preceding the commencement of this action and the date of judgment. See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004.
>
> (hereinafter referred to as the "Rule 23 Class"). Plaintiff reserves the right to amend this definition as necessary.

44. The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiff reasonably estimates that there are several hundred Class members. Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

45. There is a well-defined community of interest among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

    a. Whether Rule 23 Class members worked off-the-clock;

    b. Whether Defendant maintained a policy or practice of failing to pay Rule 23 Class members for work performed off-the-clock;

    c. Whether Defendant contractually agreed to pay Rule 23 Class members for all hours worked;

      d. Whether Defendant failed to pay Rule 23 Class members for all hours worked;

      e. Whether Defendants' violations of Texas common law were willful and/or in good faith.

46. Plaintiff's claims are typical of those of the Rule 23 Class in that she and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Class members.

47. Plaintiff will fully and adequately protect the interests of the Rule 23 Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel has interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

48. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also avoid duplicative lawsuits being filed in state and federal courts throughout the nation.

49. Defendant's corporate-wide policies and practices affected all class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each class member. Plaintiffs' claims arise from the same legal theories as all other class members. Therefore, this case will be more manageable and efficient as a Rule 23 class action. Plaintiffs and their counsel know of no unusual difficulties in this case.

50. Since the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

51. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(Brought Individually and on a Collective Basis Pursuant to 29 U.S.C. § 216(b))**
**<u>VIOLATION OF THE FAIR LABOR STANDARDS ACT,</u>**
**<u>29 U.S.C. § 201, *et seq*.</u>**

52. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

53. At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

54. Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

55. At all times relevant to this action, Plaintiff and other Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

56. Plaintiff and other Collective members either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

57. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and other Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

58. At all times relevant to this action, Defendant required Plaintiff and other Collective members to perform start-up, shut down, and additional work activities outside of their scheduled shifts as described herein, but failed to pay these employees the federally mandated minimum wage or overtime compensation for such time.

59. The uncompensated start-up, shut down, and additional work activities performed by Plaintiff and other Collective members was an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

60. In workweeks where Plaintiff and other Collective members worked 40 hours or more, the uncompensated time should have been paid them at the federally mandated rate of 1.5 times each employee's regularly hourly wage. 29 U.S.C. § 207.

61. Defendants' violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for its call center employees to perform these start-up, shut down, and additional work activities outside of their scheduled shifts and Defendant could have properly compensated Plaintiff and the Collective for such time, but did not.

62. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Class Action)**
**Violations of Texas Common Law**
**FAILURE TO PAY WAGES**

63. Plaintiff re-alleges and incorporates all previous paragraphs herein.

64. Plaintiff further brings this action pursuant to the equitable theory of *quantum meruit. See Artemis Seafood, Inc. v. Butcher's Choice, Inc.* No. CIV. A. 3:98-0282, 1999 WL

608853, at *3 (N.D. Tex. Aug. 11, 1999) (citing *Schuchart & Assocs. V. Solo Serve Corp.*, 1983 WL 1147, at *23 (W.D. Tex. June 29, 1983).

65. The Texas Common-Law Class Members are entitled to recover their unpaid "straight time" or "gap time" wages for services rendered on behalf of Defendant. These claims are independent of Plaintiff's claims for unpaid overtime wages pursuant to the FLSA, and they are therefore not preempted by the FLSA. *See Carman v. Meritage Homes Corp.*, 37 F.Supp.3d 860, 867 (S.D. Tex. 2014).

66. The Texas Common-Law Class Members provided valuable services for Defendant, at Defendant's direction and with Defendant's acquiescence.

67. Defendant accepted Plaintiff's and the Texas Common-Law Class Members' services and benefited from their timely dedication to Defendant's policies and adherence to Defendant's schedule.

68. Defendant was aware that Plaintiff and the Texas Common-Law Class Members expected to be compensated for the services they provided to Defendant.

69. Defendant has therefore been benefited from services rendered by Plaintiff and the Texas Common-Law Class Members and Plaintiff and the Texas Common-Law Class Members are entitled to recover pursuant to the equitable theory of quantum meruit.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff, ALISHA NUTT, requests the following relief:

    a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claim set forth herein (Count I);

    b. Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claim (Count II);

    c. Ordering Defendant to disclose in computer format, or in print if no

<blockquote>

computer readable format is available, the names and addresses of all collective action and Rule 23 Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d. Designating Plaintiff as the representative of the FLSA collective action Class and undersigned counsel as Class counsel for the same;

e. Designating Plaintiff as the representative of the Rule 23 Class and undersigned counsel as Class counsel for the same;

f. Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g. Declaring Defendant's violation of the FLSA was willful;

h. Declaring Defendant violated North Carolina Wage and Hour Act and that said violations were intentional, willfully oppressive, fraudulent and malicious

i. Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the collective action and Rule 23 Class members the full amount of damages and liquidated damages available by law;

j. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

k. Approving an incentive award to Plaintiff for serving as the representative of the FLSA collective and Rule 23 Class;

l. Awarding pre- and post-judgment interest to Plaintiff on these damages; and

m. Awarding such other and further relief as this Court deems appropriate.

</blockquote>

## **JURY DEMAND**

Plaintiff, ALISHA NUTT, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated: November 4, 2020					Respectfully Submitted,

                           By:	*/s/ Charles W. Branham, III*
				Charles W. Branham, III
				Texas State Bar No. 24012323
				**DEAN OMAR BRANHAM SHIRLEY, LLP**
				302 N. Market Street, Suite 300
				Dallas, TX 75202
				T: (214) 722-5990
				F: (214) 722-5991
				tbranham@dobslegal.com

				Jason T. Brown*
				Nicholas Conlon*
				Lotus Cannon*
				**BROWN, LLC**
				111 Town Square Place, Suite 400
				Jersey City, NJ 07310
				T: (877) 561-0000
				F: (855) 582-5297
				jtb@jtblawgroup.com
				nicholasconlon@jtblawgroup.com
				lotus.cannon@jtblawgroup.com
				*(to be admitted *Pro Hac Vice*)

				*Counsel for Plaintiff*